**LEWIS BRISBOIS BISGAARD & SMITH** LLP
ROGER S. RAPHAEL, SB# 111946
  Email: Roger.Raphael@lewisbrisbois.com
SHAHRAM NASSI, SB# 239812
  Email: Shahram.Nassi@lewisbrisbois.com
333 Bush Street, Suite 1100
San Francisco, California 94104-2872
Telephone: 415.362.2580
Facsimile: 415.434.0882

Attorneys for Defendant, FCA US LLC, a Delaware Limited Liability Company

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA, BAKERSFIELD DIVISION

| | |
|---|---|
| CONRADO HERRERA, an individual, | Case No. |
| Plaintiff, | **DEFENDANT FCA US, LLC'S NOTICE TO FEDERAL COURT OF REMOVAL PURSUANT TO 28 U.S.C. §§ 1332(a) AND 1441(b); CERTIFICATE OF INTERESTED PARTIES** |
| vs. | |
| FCA US LLC, a Delaware Limited Liability Company, and DOES 1 through 20, inclusive, | **[DIVERSITY]** |
| Defendants. | |

**TO THE HONORABLE COURT, PLAINTIFF HEREIN, AND HIS RESPECTIVE ATTORNEYS OF RECORD**

   **PLEASE TAKE NOTICE** that on July 21, 2020 Defendant FCA US LLC, a Delaware Limited Liability Company ("FCA"), filed this Notice of Removal to remove the state civil action pending in Superior Court of the State of California in and for the County of Kern, entitled *Conrado Herrera, an individual v. FCA US LLC, a Delaware Limited Liability Company, and Does 1 through 20, inclusive,* Kern County Superior Court Case No. BCV-20-101475 TSC, commenced on June 26, 2020, on the basis of diversity of citizenship, pursuant to 28 U.S.C. §§ 1332(a) and 1441(b) as follows:

/ / /

/ / /

/ / /

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

## I. JURISDICTION AND VENUE

1. The Court has jurisdiction of this civil action based upon diversity of citizenship pursuant to 28 U.S.C. § 1332(a) and Defendant FCA may remove this action to this Court in accordance with 28 U.S.C. § 1441(a), because this is an action between citizens of different states, and (b) the amount in controversy exceeds $75,000, exclusive of interest and costs, as set forth below. (28 U.S.C. §§ 1332, 1441(a), and 1446(b)).

2. Venue is proper in this Court pursuant to 28 U.S.C. §§ 84(c)(1), 1391, and 1446.

## II. STATUS OF THE PLEADINGS

3. On June 29, 2020, Plaintiff CONRADO HERRERA ("Plaintiff"), by and through his attorneys of records, filed a civil action in the Superior Court of California for the County of Kern, entitled *Conrado Herrera, an individual v. FCA US LLC, a Delaware Limited Liability Company, and Does 1 through 20, inclusive*.

4. On July 7, 2020, FCA's agent for service of process was served with the Summons and Complaint by personal service; a true and correct copy of the Summons and Complaint and all documents served with the Summons and Complaint are attached as **Exhibit A**.

5. On July 17, 2020, FCA filed its Answer to Plaintiff's Complaint; a true and correct copy of the Answer is attached as **Exhibit B**.

6. FCA files this Notice of Removal within the thirty (30) day time limit for removal set forth in 28 U.S.C. § 1446(b)(3).

7. Plaintiff's Complaint arises out of events related to his purchase of a new 2019 Ram 5500, VIN 3C7WRIVICL9KG527680 (the "Vehicle") automobile. Plaintiff alleges that he purchased the Vehicle on March 22, 2019 and that the Vehicle suffers from alleged defects and nonconformities. Plaintiff further alleges that he submitted the subject Vehicle for repair of alleged defects and malfunctions, specifically for issues with Powertrain Control Module Reprogram, check engine light, exhaust system light, lights shutoff issues, inoperable taillight, abs light on, traction control light on, and start up issues.

8. Plaintiff, who on information and belief, is a resident and citizen of the State of California, asserts the following claims for relief: 1) Breach of Implied Warranty of Merchantability

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1  under the Song-Beverly Warranty Act; 2) Breach of Express Warranty under the Song-Beverly

2  Warranty Act; and 3) Fraudulent Inducement — Concealment. (*See* Exhibit A.)

## III.    REMOVAL IS PROPER BASED UPON DIVERSITY OF CITIZENSHIP

9.    This action may be removed to this Court by FCA pursuant to the provisions of 28

U.S.C. §§ 1332(a) and 1441(b), in that it is a civil action between citizens of different states and the

matter in controversy exceeds the sum of $75,000, exclusive of interest and costs.

### A.    Plaintiff and Defendant Are Not Citizens of the Same State, the First Basis for Diversity Jurisdiction

10.    Plaintiff CONRADO HERRERA was at all times, a competent adult and a resident of

the State of California, and citizen of the State of California.

11.    FCA has at all times relevant to this case been a limited liability company, organized as

such under the laws of the State of Delaware. Declaration of Shahram Nassi, ¶ 2 ("Nassi Decl.").

12.    The sole member of FCA US, LLC is FCA North American Holding, LLC, a limited

liability company organized under the laws of the State of Delaware. Nassi Decl. ¶ 3.

13.    The sole member of FCA North America Holding, LLC is Fiat Chrysler Automobiles,

N.V., a publically traded company incorporated under the laws of the Netherlands and whose principal

place of business is London, England. Nassi Decl. ¶ 4.

14.    FCA US LLC's corporate headquarters and principal place of business are, and have

been since before June 13, 2016, located at 1000 Chrysler Drive, Auburn Hills, Michigan. Nassi Decl.

¶ 5.

15.    From its Auburn Hills, Michigan, headquarters, FCA US LLC, directs, controls, and

coordinates activities which include, but are not limited to, the following: (1) matters relating to the

financing of FCA US LLC's operations; (2) matters relating to Human Resources of FCA US LLC;

(3) matters relating to legal, regulatory, and trade compliance of FCA US LLC; (4) matters relating to

the information technology of FCA US LLC; and (5) matters relating to the tax obligations of FCA

US LLC. Nassi Decl. ¶ 6.

16.    For purposes of determining diversity jurisdiction, "a corporation shall be deemed to be

a citizen of every State...by which it has been incorporated and of the State...where it has its principal

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1  place of business." 28 U.S.C. § 1332(c)(1). While a corporation's state of incorporation can be

2  determined with ease, its principal place of business often proves elusive. To simplify the

3  jurisdictional inquiry, the Supreme Court has defined "principal place of business" to mean "the place

4  where the corporation's high level officers direct, control, and coordinate the corporation's activities."

5  *Hertz Corp. v. Friend*, 559 U.S. 77, 80, (2010). This "nerve center" is "typically...found at a

6  corporation's headquarters." *Id.* at 81. *3123 SMB, LLC v. Horn*, 880 F.3d 461, 465 (9th Cir. 2018)

7     17.    Being that FCA's "nerve center," so to speak, is in Auburn Hills, Michigan, FCA is a

8  citizen of Michigan. Therefore, Plaintiff and Defendant FCA are not citizens of the same state and

9  removal based on diversity of citizenship/residency is proper.

10     **B.    The Amount in Controversy Exceeds $75,000, the Second Basis for Diversity**
       **Jurisdiction.**

11

12     18.    FCA disputes that it is liable for any damages whatsoever to Plaintiffs.  Nevertheless,

13  FCA can demonstrate that the amount in controversy exceeds $75,000 under the "preponderance of

14  the evidence" standard.  *See Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 699 (9th Cir. 2007).

15  The standard requires only that the removing party present evidence that "it is more likely than not"

16  that the amount in controversy is satisfied.  *Id.*

17     19.    In his Complaint, Plaintiff alleges that the Vehicle was out of service by reason of

18  repair of non conformities. Plaintiff further alleges that he submitted the subject Vehicle for defects

19  and malfunctions, specifically for issues with Powertrain Control Module Reprogram, check engine

20  light, exhaust system light, lights shutoff issues, inoperable taillight, abs light on, traction control light

21  on, and start up issues. (*See* Exhibit A.)

22     Plaintiff seeks damages specifically for:

23     A.    For replacement or restitution, at Plaintiff's election, according to proof;

24     B.    For incidental damages, according to proof;

25     C.    For consequential damages, according to proof;

26     D.    For damages sustained from negligent auto repairs, according to proof;

27     E.    For a civil penalty as provided in Song-Beverly, in an amount not to exceed two times

28  the amount of Plaintiff's actual damages;

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

F.      For actual attorney's fees, reasonably incurred;

G.      For costs of suit and expenses, according to proof;

H.      For the difference between the value of the Vehicle as accepted and the value the Vehicle would have had if it had been as warranted;

I.      For remedies provided in Chapters 6 and 7 of Division 2 of the Commercial Code;

J.      For pre-judgment interest at the legal rate;

K.      For punitive damages according to proof;

L.      Such other relief the Court deems appropriate. (See Exhibit A, Complaint, Prayer, p. 8.)

20.      Plaintiff's Complaint alleges that the amount in controversy exceeds $25,000, exclusive of interest and costs, and, in addition seeks a civil penalty of two times Plaintiff's damages. (See, e.g., Compl. ¶¶ 13, 137). This alone totals $75,000. Add on the request for attorneys' fees under Song-Beverly (Compl. ¶¶ 13, 136,), and punitive damages sought under the fraudulent concealment (Compl. third case of action, prayer for relief), and the $75,000 threshold is exceeded.

21.      Pursuant to the provisions of 28 U.S.C. §§ 1441(b) and 1332, this case meets the elements of diversity jurisdiction if  it is a civil action between citizens of different states and the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs. Where it is unclear from the face of the complaint whether the amount in controversy exceeds $75,000, "the removing defendant bears the burden of establishing, by a preponderance of the evidence, that the amount in controversy exceeds the jurisdictional threshold." *Urbino v. Orkin Servs. of Cal., Inc.*, 726 F.3d 1118, 1121–22 (9th Cir. 2013) (quotation marks and citations omitted).

Directly in line with this reasoning is *Gonzales v. CarMax Auto Superstores, LLC*, 840 F.3d 644 (9th Cir. 2016), a factually similar case in which the plaintiff sued a used car dealer for violation of the Song-Beverly Act and other state law claims. Defendant removed based on diversity, and the plaintiff challenged the removal, arguing that the amount-in-controversy requirement was not satisfied. The Ninth Circuit disagreed and held the following:

> To establish original jurisdiction based on diversity of parties, the amount in controversy must "exceed[] the sum or value of $75,000, exclusive of interest and costs." 28 U.S.C. § 1332(a). We have defined the amount in controversy as the "amount at stake in the underlying litigation," [citation]; this includes any result of the litigation,

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4819-8346-9507.1

5

DEFENDANT FCA US, LLC'S NOTICE TO  FEDERAL COURT OF REMOVAL

> excluding interests and costs, that "entail[s] a payment" by the defendant. [Citation]. **This amount includes, *inter alia*, damages (compensatory, punitive, or otherwise) and the cost of complying with an injunction, as well as attorneys' fees awarded under fee shifting statutes.**[Citation].
>
> In this case, when the potential cost of complying with injunctive relief is considered along with Gonzales's claims for compensatory damages and punitive damages, the district court did not err in finding that the jurisdictional amount-in-controversy requirement was satisfied.

*Gonzales*, *supra*, at 648-649, emphasis added.

The reasoning of *Gonzales* applies directly here. Plaintiff alleges a violation of California's lemon law, the Song-Beverly Consumer Warranty Act, Cal. Civ. Code § 1790, et. seq., as well as fraudulent concealment.   Plaintiff goes even further and specifically requests civil penalties. Cal. Civ. Code § 1794 provides that if a defendant's actions are "willful," a prevailing plaintiff may recover, in addition to compensatory damages, "*a civil penalty which shall not exceed two times the amount of actual damages*."   Plaintiff also seeks punitive damages under the fraudulent concealment cause of action.  Assuming the Vehicle's cost was at least $25,001, which is what the Complaint states, when civil penalties are added to the amount of actual damages Plaintiff is seeking, Plaintiff would be entitled to at least $75,000 should he prevail at trial.  That's not counting potential attorney's fees and punitive damages sought by Plaintiff.

In addition, as the *Gonzalez* court indicated, attorneys' fees awarded under fee-shifting statutes are to be considered in assessing the jurisdictional threshold. In this case, Plaintiff seeks such an award. How are these fees to be computed? At the time of *Gonzalez*, it was "an open question whether attorneys' fees that are anticipated but unaccrued at the time of removal or filing in federal court… may be included in the amount-in-controversy." (*Gonzalez,* at fn. 2). That open question was resolved last year in *Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413 (9th Cir. 2018), an analogous diversity case. In *Chavez*, the Ninth Circuit held that "the amount in controversy is determined by the complaint operative at the time of removal and *encompasses all relief a court may grant on that complaint if the plaintiff is victorious*."(*Id.*) Under that standard, this Court should consider the range of fee awards that Plaintiff would receive if he were to be victorious at trial. As such, in this particular case, while FCA *can* include the cost of attorneys' fees, FCA does not *need* to include attorneys' fees in its

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4819-8346-9507.1

6

DEFENDANT FCA US, LLC'S NOTICE TO  FEDERAL COURT OF REMOVAL

amount in controversy calculation since the alleged damages combined with civil penalties of $75,000 alone, already exceed the jurisdictional minimum. However, the Court should note that the addition or consideration of attorneys' fees also allows FCA to meet the amount in controversy requirement. It requires no great familiarity with the cost of litigation to conclude that Plaintiff will likely incur further expenses in taking this case through discovery, depositions, motions, experts, and trial. Thus, when either the exposure to civil penalties and/or the exposure to attorneys' fees are properly considered, there is simply no question that the Court has diversity jurisdiction.

22.     This removal notice is filed in the United States District Court for the Eastern District of California because the action is pending in state court in the County of Kern, within this Court's jurisdiction.

23.     FCA has sought no similar relief with respect to this matter (*See* Nassi Decl., ¶ 7).

**WHEREFORE,** Defendant FCA respectfully prays that this Notice of Removal be deemed good and sufficient, and that Case No. BCV-20-101475 TSC be removed from the Superior Court of California, County of Kern, to the docket of this honorable Court, the District Court of the United States, for the Eastern District of California. FCA has filed the Notice of Removal of this action from the Kern County Superior Court, in which it is now pending; a copy of this Notice has been served upon Plaintiff.

DATED: July 21, 2020                    LEWIS BRISBOIS BISGAARD & SMITH LLP

                                        By:    */s/ Shalram Nassi*
                                               Roger S. Raphael
                                               Shahram Nassi
                                               Attorneys for Defendant, FCA US LLC

1

## CERTIFICATE OF INTERESTED PARTIES

2    Pursuant to Fed. R. Civ. P. 7.1, counsel of record for Defendant FCA US, LLC ("FCA"),

3 certifies that the following entities may have a pecuniary interest in the outcome of this case. These

4 representations are made to enable the Court to evaluate possible disqualification or recusal:

5        1.    Fiat Chrysler Automobiles N.V., a publicly held company.

6        2.    FCA North America Holdings LLC, formerly known as Fiat North America LLC, is a

7              subsidiary of Fiat Chrysler Automobiles N.V., and owns more than 10% of FCA US

8              LLC.

9        3.    No other entities or persons have either an ownership interest of ten percent or more or

10             a financial or other interest in the outcome of the proceeding.

11 DATED: July 21, 2020                      LEWIS BRISBOIS BISGAARD & SMITH LLP

12                                    By: */s/ Shahram Nassi*
                                         Roger S. Raphael
13                                       Shahram Nassi
14                                       Attorneys for Defendant, FCA US. LLC

15

16

17

18

19

20

21

22

23

24

25

26

27

28



**EXHIBIT A**

**CT Corporation**

**Service of Process Transmittal**
07/07/2020
CT Log Number 537913928

| | |
|---|---|
| **TO:** | Melissa Gravlin<br>FCA US LLC<br>1000 Chrysler Dr Ofc of<br>Auburn Hills, MI 48326-2766 |
| **RE:** | **Process Served in California** |
| **FOR:** | FCA US LLC  (Domestic State: DE) |

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | Conrado Herrera, etc., Pltf. vs. FCA US, LLC, etc., et al., Dfts.<br>*Name discrepancy noted.* |
| **DOCUMENT(S) SERVED:** | Summons, Complaint |
| **COURT/AGENCY:** | Kern County - Superior Court - Bakersfield, CA<br>Case # BCV20101475 |
| **NATURE OF ACTION:** | Product Liability Litigation - Lemon Law - 2019 Ram 5500 - VIN:<br>3C7WRMCL9KG527680 |
| **ON WHOM PROCESS WAS SERVED:** | C T Corporation System, Los Angeles, CA |
| **DATE AND HOUR OF SERVICE:** | By Process Server on 07/07/2020 at 14:28 |
| **JURISDICTION SERVED :** | California |
| **APPEARANCE OR ANSWER DUE:** | Within 30 days after service |
| **ATTORNEY(S) / SENDER(S):** | David N. Barry<br>The Barry Law Firm<br>11845 W. Olympic Blvd.<br>Suite 1270<br>Los Angeles, CA 90064<br>(310)684-5859 |
| **ACTION ITEMS:** | CT has retained the current log, Retain Date: 07/09/2020, Expected Purge Date:<br>07/14/2020<br><br>Image SOP<br><br>Email Notification,  Lance Arnott  SOPVerification@wolterskluwer.com |
| **SIGNED:**<br>**ADDRESS:** | C T Corporation System<br>1999 Bryan St Ste 900<br>Dallas, TX 75201-3140 |
| **For Questions:** | 877-564-7529<br>MajorAccountTeam2@wolterskluwer.com |

Page 1 of  1 / BK

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.

**Wolters Kluwer**

# PROCESS SERVER DELIVERY DETAILS

**Date:**                    Tue, Jul 7, 2020

**Server Name:**             Paul Biafore

**Location:**                Los Angeles, CA-LA

| Entity Served | FCA CORP. |
|---|---|
| Agent Name | C T CORPORATION SYSTEM |
| Case Number | BCV20101475 |
| Jurisdiction | CA-LA |



SUM-100

# SUMMONS
## *(CITACION JUDICIAL)*

| | |
|---|---|
| **NOTICE TO DEFENDANT:** *(AVISO AL DEMANDADO):* FCA US, LLC, A Delaware Limited Liability Company; and DOES 1 through 20, inclusive, **YOU ARE BEING SUED BY PLAINTIFF** *(LO ESTÁ DEMANDANDO EL DEMANDANTE):* CONRADO HERRERA, an individual, | FOR COURT USE ONLY *(SOLO PARA USO DE LA CORTE)* **ELECTRONICALLY FILED** 6/29/2020 **Kern County Superior Court** **By Candice Rocha, Deputy** |

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case. *¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| | |
|---|---|
| The name and address of the court is: *(El nombre y dirección de la corte es):* Metropolitan Division  1415 Truxtun Ave  Bakersfield, CA 93301 | CASE NUMBER: *(Número del Caso):* BCV-20-101475 |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
David N. Barry, Esq. 11845 W. Olympic Blvd., Suite 1270, Los Angeles, CA 90064  (310) 684-5859

| DATE: *(Fecha)* 6/29/2020 | TAMARAH HARBER-PICKENS | Clerk, by *(Secretario)* Candice Rocha | , Deputy *(Adjunto)* |
|---|---|---|---|

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☐ on behalf of *(specify):*

under: ☐ CCP 416.10 (corporation)  ☐ CCP 416.60 (minor)
☐ CCP 416.20 (defunct corporation)  ☐ CCP 416.70 (conservatee)
☐ CCP 416.40 (association or partnership)  ☐ CCP 416.90 (authorized person)
☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

| | | |
|---|---|---|
| Form Adopted for Mandatory Use  Judicial Council of California  SUM-100 [Rev. July 1, 2009] | **SUMMONS** | Code of Civil Procedure §§ 412.20, 465  www.courtinfo.ca.gov |

DAVID N. BARRY, ESQ. (SBN 219230)
THE BARRY LAW FIRM
11845 W. Olympic Blvd., Suite 1270
Los Angeles, CA 90064
Telephone: 310.684.5859
Facsimile: 310.862.4539

Attorneys for Plaintiff, CONRADO HERRERA

**ELECTRONICALLY FILED**
**6/26/2020 3:41 PM**
**Kern County Superior Court**
**By Candice Rocha, Deputy**

# SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE COUNTY OF KERN – METROPOLITAN DIVISION

| | |
|---|---|
| CONRADO HERRERA, an individual,<br><br>Plaintiff,<br><br>v.<br><br>FCA US, LLC, A Delaware Limited Liability Company; and DOES 1 through 20, inclusive,<br><br>Defendants. | Case No.  BCV-20-101475<br><br>**COMPLAINT FOR DAMAGES**<br><br>*Assigned for all purposes to the Hon. in Dept.* |

1.  Breach of Implied Warranty of Merchantability under the Song-Beverly Warranty Act.
2.  Breach of Express Warranty under the Song-Beverly Warranty Act.
3.  Fraudulent Inducement – Concealment.

JURY TRIAL DEMANDED.

-1-
**COMPLAINT FOR DAMAGES**

PLAINTIFF, CONRADO HERRERA, an individual, hereby allege and complain as follows:

**GENERAL ALLEGATIONS COMMON TO ALL CAUSES OF ACTION**

1. Defendant, FCA US, LLC (hereinafter referred to as "Manufacturer"), is a limited liability company doing business in the County of Kern, State of California, and, at all times relevant herein, was/is engaged in the manufacture, sale, distribution, and/or importing of Ram motor vehicles and related equipment.

2. The true names and capacities, whether individual, corporate, associate, or otherwise, of the Defendants, Does 1 through 20, inclusive, are unknown to Plaintiff who therefore sues these Defendants by such fictitious names. Plaintiff will seek leave to amend this Complaint to set forth their true names and capacities when they have ascertained them. Further, Plaintiff is informed and believes, and thereon alleges, that each of the Defendants designated herein as a "Doe" is responsible in some manner for the events and happenings herein referred to and caused injury and damage to Plaintiff as herein alleged.

3. Plaintiff is informed and believes, and thereon alleges, that at all times herein mentioned, Defendants, and each of them, were the agents, servants, and/or employees of each of their Co-Defendants. Plaintiff is informed and believes, and thereon alleges, that in doing the things hereinafter alleged Defendants, and each of them, were acting in the course and scope of their employment as such agents, servants, and/or employees, and with the permission, consent, knowledge, and/or ratification of their Co-Defendants, principals, and/or employers.

4. On or about March 22, 2019, defendants Manufacturer and Does 1 through 20 inclusive, manufactured and/or distributed into the stream of commerce a new 2019 Ram 5500, VIN 3C7WRMCL9KG527680 (hereinafter referred to as the "Vehicle") for its eventual sale/purchase in the State of California.

5. On or about April 22, 2019, Plaintiff purchased, for personal, family, and/or household purposes, the subject Vehicle from the Seller. The purchase agreement is in the possession of Defendants.

-2-
**COMPLAINT FOR DAMAGES**

6. The subject Vehicle was/is a "new motor vehicle" under the Song-Beverly Warranty Act.

7. Along with the purchase of the Vehicle, Plaintiff received written warranties and other express and implied warranties including, but not limited to, warranties from Manufacturer and Seller that the Vehicle and its components would be free from all defects in material and workmanship; that the Vehicle would pass without objection in the trade under the contract description; that the Vehicle would be fit for the ordinary purposes for which it was intended; that the Vehicle would conform to the promises and affirmations of fact made; that Defendants, and each of them, would perform any repairs, alignments, adjustments, and/or replacements of any parts necessary to ensure that the Vehicle was free from any defects in material and workmanship; that Defendants, and each of them, would maintain the utility of the Vehicle for Three (3) years or 36,000 miles under the basic warranty and Five (5) years or 60,000 miles under the powertrain warranty and would conform the Vehicle to the applicable express warranties. (A copy of the written warranty is in the possession of the Defendants).

8. Plaintiff has duly performed all the conditions on Plaintiff's part under the purchase agreement and under the express and implied warranties given to plaintiff, except insofar as the acts and/or omissions of the Defendants, and each of them, as alleged herein, prevented and/or excused such performance.

9. Plaintiff has delivered the Vehicle to the Manufacturer's authorized service and repair facilities, agents and/or dealers, including Seller, on at least Three (3) occasions resulting in the Vehicle being out of service by reason of repair of nonconformities. Repair Orders/Invoices are in the possession of Defendants.

10. By way of example, and not by way of limitation, the defects, malfunctions, mis adjustments, and/or nonconformities with Plaintiff's Vehicle include the following: Plaintiff has submitted the subject Vehicle for defects and malfunctions, specifically for issues with Powertrain Control Module Reprogram, check engine light, exhaust system light, lights shutoff issues, inoperable taillight, abs light on, traction control light on, and start up issues.

///

-3-

**COMPLAINT FOR DAMAGES**

11. Each time Plaintiff delivered the nonconforming Vehicle to a Manufacturer-authorized service and repair facility, Plaintiff notified Defendants, and each of them, of the defects, malfunctions, mis adjustments, and/or nonconformities existent with the Vehicle and demanded that Manufacturer or its representatives repair, adjust, and/or replace any necessary parts to conform the Vehicle to the applicable warranties.

12. Each time Plaintiff delivered the nonconforming Vehicle to a Manufacturer-authorized service and repair facility, Defendants, and each of them, represented to Plaintiff that they could and would conform the Vehicle to the applicable warranties, that in fact they did conform the Vehicle to said warranties, and that all the defects, malfunctions, mis adjustments, and/or nonconformities have been repaired; however, Manufacturer or its representatives failed to conform the Vehicle to the applicable warranties because said defects, malfunctions, mis adjustments, and/or nonconformities continue to exist even after a reasonable number of attempts to repair was given.

13. The amount in controversy exceeds TWENTY-FIVE THOUSAND DOLLARS ($25,000.00), exclusive of interest and costs, for which Plaintiff seeks judgment against Defendants, together with equitable relief. In addition, Plaintiff seeks damages from Defendants, and each of them, for incidental, consequential, exemplary, and actual damages including interest, costs, and actual attorneys' fees.

**The Totally Integrated Power Module (TIPM) Defect**

14.    The Subject Vehicle was factory-equipped with a Totally Integrated Power Module ("TIPM") which is located under the hood in the vehicle engine compartment. FCA US LLC equipped the Subject Vehicle with a TIPM that FCA US LLC refers to as the "TIPM 7."

15. The TIPM is the chief component in the Subject Vehicle's power distribution systems and consists of a computer, relays, fuses, and controls. The TIPM provides the primary means of voltage distribution and protection for the entire vehicle and FCA US LLC acknowledges that the TIPM is intended to provide safe, reliable, and centralized distribution of power to the Subject Vehicle's electrical systems.

16. The electrical systems that receive power distributed by the TIPM include the vehicles'

-4-

**COMPLAINT FOR DAMAGES**

safety systems, security system, ignition system, fuel system, electrical powertrain, and the vehicles' comfort and convenience systems. These systems control components including the air bags, fuel pump, windshield wipers, headlights, taillights, turn signals, and power windows and doors.

17. The TIPM installed in the Subject Vehicle is defective and thus fails to reliably control and distribute power to various vehicle electrical systems and component parts.

18. As a result of the TIPM defect, the Subject Vehicle has had the following issues:

      a.   The check engine light comes on frequently;

      b.   Multiple electrical issues; and,

      c.   Numerous recalls.

19. The TIPM in the Subject Vehicle is likely to cause a variety of electrical issues such as a loss of headlight function, and unexpected distractions, such as the vehicle's horn or alarm sounding while on a roadway, which may each increase the risk of injury for the driver, passengers, or others on the roadway. The defective TIPM imposes a substantial safety risk to the operator of the vehicle and surrounding drivers.

20. FCA US LLC has instructed employees in multiple divisions to investigate the TIPM defect. As recently as spring 2012, teams were investigating vehicles equipped with the TIPM-7 not starting, having difficulty starting, and stalling, attributed to a malfunctioning fuel pump relay integral to the TIPM printed circuit board.

### FCA US LLC's Knowledge of the TIPM Defect

21. FCA US LLC had superior and exclusive knowledge of the TIPM defects, and knew or should have known that the defects were not known by or reasonably discoverable by Plaintiff before Plaintiff purchased or leased the Subject Vehicle.

22. FCA US LLC's knowledge of the TIPM-7 defects since at least 2007 is demonstrated by the numerous consumer complaints submitted to FCA US LLC and to NHTSA, multiple TIPM-related recalls and technical service bulletins, two NHTSA investigations into TIPM-related complaints, FCA US LLC's exhaustive pre-release vehicle testing, and FCA US LLC's exclusive access to post-sale data about the performance of and repairs made to its vehicles. The use of limited recalls and TSBs as stop-gap measures demonstrates a pattern of concealment and improper

**COMPLAINT FOR DAMAGES**

1   denial of the TIPM defect by FCA US LLC.

2      23. FCA US LLC vehicles have been plagued with severe TIPM problems for the past decade.

3   As a result, FCA US LLC has initiated multiple TIPM-related recalls to address safety or emissions

4   concerns.

5      24. An automotive manufacturer service bulletin typically takes time to develop and issue

6   because the manufacturer needs to identify and understand the problem, develop and test the new

7   repair instructions, and draft and finalize the bulletin before distributing it to dealerships.

8      25. The defect is so widespread that TIPM 7 replacement parts have often been on national

9   backorder, with drivers reporting from 2011 to 2014 that they had to wait weeks or months to have

10   their TIPMs replaced. In the meantime, FCA US LLC dealerships and auto-technicians are

11   advising many drivers not to drive their vehicles until the TIPM is replaced, due to safety risks.

12                 *NHTSA Recall 05V-461*

13       *(Defective TIPM-6 Causing Vehicles to Roll Away Without Warning)*

14      26. In October 2005, FCA US LLC recalled model year ("MY") 2006 Dodge Ram 1500 4x4

15   vehicles to reprogram (i.e., "flash") the TIPM-6 with new software to cure a safety-related defect.

16      27. The defect was that the TIPM-6 could have incorrect transfer case calibration set points. As

17   a consequence, the transfer case could shift into neutral without warning and, if the parking brake

18   were not engaged, the vehicle could roll away.

19      28. FCA US LLC admitted that because of the defect, "the vehicle could roll away with the

20   transmission in the Park position and cause a crash without warning."

21      29. This defect shows that FCA US LLC was aware of the dangerous, life-threatening

22   consequences of a defective TIPM. Yet, despite this knowledge, FCA US LLC manufactured the

23   next generation TIPM, the TIMP-7, without resolving the module's propensity to cause life-

24   threatening crashes.

25         *NHTSA Investigation PE07-027 / NHTSA Recall 07V-291*

26             *(Defective TIPM Causing Engine Stalling)*

27      30. In May 2007, NHTSA's Office of Defect Investigation ("ODI") opened Preliminary

28   Evaluation PE07-027.

     31. The ODI had received 53 consumer complaints alleging incidents of engine stalling in MY

**COMPLAINT FOR DAMAGES**

1  2007 Jeep Wrangler vehicles, prompting the evaluation. Most of the stalls occurred suddenly, and
2  in 12 of them a loss of electrical power causing a loss of vehicle lighting coincided with the stalls.

3      32. The purpose of NHTSA's evaluation was to assess the frequency, scope, and safety
4  consequences of the defect in the subject vehicles.

5      33. The ODI agreed to close the evaluation when, on July 3, 2007, FCA US LLC agreed to
6  recall approximately 80,894 MY 2007 Jeep Wrangler and MY 2007 Dodge Nitro vehicles
7  (NHTSA Recall 07V-291).

8      34. To remedy the stalling problem, FCA US LLC agreed to reprogram the TIPM in the subject
9  vehicles with revised software. FCA US LLC admitted that there was an "issue" with the TIPM
10  "that could result in an engine stall while driving," which could "cause a crash without warning."

11      35. At the time the evaluation as closed, the ODI had received 230 consumer complaints, two
12  of which involved crashes and injuries. FCA US LLC had directly received 279 complaints by this
13  time.

14      36. This recall did not cure all of the TIPM defects in the 2007 Dodge Nitro, as demonstrated
15  by the fact that the 2007 Dodge Nitro was recalled again in November 2009 for a safety defect
16  concerning TIPM-related windshield wiper problems.

17      37. Because the same TIPM was installed in the MY 2007 Dodge Nitro as in the Vehicle, this
18  recall demonstrates FCA US LLC's knowledge of the defective TIPM in the Vehicle.

19      38. This recall did not resolve the stalling problems caused by the faulty TIPM, as
20  demonstrated by a consumer complaint submitted to NHTSA on February 7, 2008 in which the
21  complainant describes stalling in a MY 2007 Jeep Wrangler *after* having the recall repairs, and
22  subsequently being told by a dealership service manager that the TIPM had to be replaced to cure
23  the stalling problem (NHTSA ID No. 10217364, included in its entirety below.)

24                          *Emissions Recall 2007-15-E (G23)*

25                    *(Drivability Concerns Resulting from TIPM-7)*

26      39. In June 2007, FCA US LLC released an emission recall on certain vehicles equipped with
27  the TIPM-7. The recall was conducted to reprogram the vehicles' TIPM to prevent a condition
28  where during some trips the vehicles would have only a single forward gear ratio available. FCA
    US LLC admitted that "[b]oth emissions and drivability would be affected when vehicle is stick in

                                    -7-
                        **COMPLAINT FOR DAMAGES**

1    one forward gear."

2                    *Technical Service Bulletin 08-018-08*

3                    *(Defective TIPM Causing Inability to Record Data)*

4        40. In May 2008, FCA US LLC distributed TSB 08-018-08 to its nationwide network of

5    authorized dealers and service providers.

6        41. This TSB is not publicly available, either in summary form or in its entirety, because

7    neither FCA US LLC nor NHTSA classified the TIPM defect addressed in the TSB as a *safety*

8    *defect.*

9        42. The TSB covered several 2008 MY vehicles equipped with a TIPM-7.

10       43. The TIPM defect purportedly resolved by this TSB involved data recording – specifically,

11   the inability to record data because of TIPM software problems.

12       44. The TSB states that "[d]ata recording is a valuable tool that provides assistance in

13   diagnosing difficult to duplicate customer concerns. Some of the[se] models… were incapable of

14   utilizing the data recording features due to software compatibility concerns within the TIPM." In

15   other words, FCA US LLC admitted internally that owners and lessees of these vehicles would

16   suffer mechanical problems with their vehicles, take the vehicles in for repair, and be told that the

17   onboard computer did not show that any mechanical "event" or "problem" had occurred. Any

18   reasonable consumer who has taken her car in for repairs would view this as a maddening scenario.

19       45. It is troubling that this TIPM defect has not been classified as a safety defect. Although the

20   failure to record data itself does not appear to cause a loss of vehicle control and is probably

21   unnoticed by the driver, the failure to record real-time data could fail to record the manifestation of

22   a safety defect, such as stalling, that would present a life-threatening safety hazard. FCA US

23   LLC's, as well as consumers', ability to detect the manifestation of a safety defect was severely

24   compromised by the inability to record data caused by the defective TIPM.

25       46. Because the TIPM installed in these vehicles is the same as in the Vehicle, FCA US LLC

26   was aware – yet again – that the TIPM installed in the Vehicle was defective, and chose a stop-gap

27   remedy on a limited set of vehicles.

28       47. Because the TSB was not publicly available, owners and lessees of these vehicles were

     unaware of the issue and many of them likely did not obtain the TIPM repair described in the TSB.

                                        -8-
─────────────────────────────────────────────
                       **COMPLAINT FOR DAMAGES**

48. By proceeding with a non-public TSB instead of a publicly-announced safety recall, FCA US LLC chose to remain willfully blind about the manifestation of safety defects that a properly functioning TIPM would have enabled the data recorder to record.

49. Rather than disclose the TIPM problem and offer an adequate solution, FCA US LLC attempted to conceal it by advising its network of authorized dealers and service providers to update and/or flash the TIPM instead of replacing it.

*NHTSA Recall 09V-438*

*(Defective TIPM Windshield Wiper Relays Increasing Risk of a Crash)*

50. In November 2009, FCA US LLC notified NHTSA of a safety defect affecting the windshield wiper system on certain vehicles equipped with the TIPM-7.

51. The TIPM was defective in that a relay controlling the wipers could short out, causing the wipers to fail, in turn causing impaired driver visibility increasing the risk of a crash.

52. FCA US LLC recalled 84,680 vehicles to reprogram the TIPM.

53. Because the TIPM in the vehicles subject to this recall and in the Vehicle is the same, this recall demonstrates that FCA US LLC knew, at the time that Plaintiff purchased or leased the Vehicle, that the TIPM was defective.

*Technical Service Bulletin 08-053-11*

*(Defective TIPM Causing Failure to Start and Intermittent Alarm Sound)*

54. In August 2011, FCA US LLC distributed TSB 08-053-11 to its nationwide network of authorized dealers and service providers.

55. This TSB is not publicly available, either in summary form or in its entirety, because neither FCA US LLC nor NHTSA have classified the TIPM defect addressed in the TSB as a safety defect.

56. This TSB covered numerous vehicles equipped with the TIPM-7.

57. The TIPM was defective in that the vehicle theft alarm would intermittently sound for no apparent reason and the vehicles would fail to start.

58. The TSB's purported fix was to flash reprogram the TIPM with new software.

59. It is troubling that this TIPM defect has not been classified as a safety defect. If a vehicle alarm sounds during regular operation of the vehicle, it could be so jarring and distracting as to

-9-

**COMPLAINT FOR DAMAGES**

1   cause the driver to lose control of the vehicle. Once again, FCA US LLC chose to address this

2   problem internally rather than conduct a safety recall which would have alerted its customers,

3   NHTSA, and the public to the ongoing, repeated safety problems with the TIPM.

4       60. Because the TIPM installed in these vehicles is the same as in the Vehicle, FCA US LLC

5   was aware—once again—that the TIPM installed in the Subject Vehicle was defective, and again

6   chose an inadequate stop-gap remedy on a limited set of vehicles.

7       61. Rather than disclose the TIPM problem and offer an adequate solution, FCA US LLC

8   attempted to conceal it by advising its network of authorized dealers and service providers to

9   update and/or flash the TIPM instead of replacing it.

10                           *NHTSA Recall 13V-282*

11            *(Defective TIPM Causing Non-Deployment of Active Head Restraints)*

12       62. In July 2013, FCA US LLC initiated yet another TIPM-related safety recall. FCA US LLC

13   notified NHTSA that the airbag warning lamp would incorrectly illuminate due to an electrical

14   overstress condition within the Occupant Restraint Controller Module ("ORCM"), which would in

15   turn cause the active head restraints to not deploy in certain rear-impact collisions, thereby

16   increasing the risk of injury to a front seat occupant.

17       63. FCA US LLC recalled approximately 442,481 vehicles to flash the TIPM or replace the

18   ORCM, as required. The TIPM was flash reprogrammed in certain vehicles equipped with the

19   TIPM-7.

20       64. Once again, this recall evidences FCA US LLC's knowledge of the defective TIPM and

21   shows FCA US LLC's repeated attempts to employ inadequate piecemeal remedies on the Subject

22   Vehicle.

23            *Center for Auto Safety Submits Defect Petition to NHTSA*

24       65. On August 21, 2014, the Center for Auto Safety ("CAS") submitted a defect petition to

25   NHTSA, requesting that NHTSA "initiate a safety defect investigation into failures associated with

26   the [TIPM] installed in FCA US LLC SUVs, trucks, and vans beginning in the 2007 model year."

27   The petition noted that TIPM failures result in a variety of safety-related problems, "many of which

28   have the potential for destructive results," such as stalling, airbag non-deployment, failure of fuel-

    pump shutoff, and vehicle fires.

**COMPLAINT FOR DAMAGES**

66. CAS had received at least 70 complaints related to the TIPM in FCA US LLC vehicles, and a stall/no-start condition was the most reported outcome of TIPM failure. Seventeen of these complaints report engine stalling and 34 report a failure to start. Two of them report smoke and one reports a vehicle fire.

67. The CAS petition asserts that FCA US LLC's previous TIPM-related recalls were insufficient "to address the TIPM problem widespread throughout FCA US LLC's fleet, instead focusing on a highly limited set of vehicles and circumstances."

68. Plaintiff has suffered the consequences of the TIPM failure described by CAS, and Plaintiff agrees with CAS's characterization of the TIPM problem as widespread throughout FCA US LLC's fleet and in the Vehicle.

*NHTSA Recall 14V-530*

*<u>(Failure of Fuel Pump Relay Within the TIPM)</u>*

69. On September 3, 2014, FCA US LLC notified NHTSA of yet another TIPM-related safety defect. This time, the fuel pump relay within the TIPM could fail, causing stalling without warning or failure to start. In FCA US LLC's words, "[t]he vehicle may intermittently or permanently: not start, not start the first time, not stay running upon start, stall, or the fuel pump may stay energized upon vehicle shutdown," and "[a]n intermittent or failed fuel pump relay could cause the engine to stall while driving and cause a crash without a warning."

70. The remedy under the recall was to install a new fuel pump relay external to the TIPM. FCA US LLC may have decided that resolving the problem within the TIPM was not feasible, given the extensive defects and problems within the TIPM.

71. The recall covered 188,723 vehicles equipped with the TIPM-7.

72. Yet again, this recall demonstrates FCA US LLC's knowledge that the TIPM in the Subject Vehicle was defective. And again, FCA US LLC chose to implement an inadequate piecemeal remedy.

*<u>NHTSA Agrees to Evaluate the CAS Defect Petition</u>*

73. On September 8, 2014, the CAS supplemented its defect petition with additional consumer complaints about the TIPM. In the supplement, the CAS identified 24 crashes from NHTSA's Early Warning Reporting ("EWR") database that the CAS believes may be related to TIPM failure.

-11-
**COMPLAINT FOR DAMAGES**

Crash reports in the EWR database are submitted by the vehicle manufacturer, demonstrating FCA US LLC's awareness of these crashes.

74. On September 25, 2014, NHTSA's ODI opened Investigation DP14-004 to evaluate the CAS's defect petition. The investigation will "review allegations of [TIPM] failures resulting in engine stall while driving, airbag non-deployment incidents, unintended acceleration and/or vehicle fire in certain . . . vehicles . . . equipped with TIPM-7 modules and manufactured by FCA US LLC Group LLC[.]"

75. The ODI investigation covers approximately 4,800,000 vehicles equipped with the TIPM-7.

76. On September 30, 2014, the CAS submitted another supplement to its defect petition, including approximately 25 new consumer complaints about the TIPM that it had received.

77. With CAS's submission of its defect petition and supplements, and NHTSA's opening of the investigation, FCA US LLC is aware of all of the TIPM-related complaints made to the CAS. This is in addition to all of the TIPM-related complaints made to NHTSA about which FCA US LLC is, and has been, aware. At the very least, FCA US LLC has constructive knowledge of the consumer complaints submitted to NHTSA, which are publically available on the NHTSA website.

78. In response to a request for information by NHTSA, FCA US LLC stated the following in a December 12, 2014 letter to NHTSA:

    a. FCA US LLC had identified 709 reports which relate or may relate to the TIPM in the subject vehicles, representing 199 unique vehicle identification numbers ("VINs").

    b. FCA US LLC had identified 605 consumer complaints, made to FCA US LLC, which relate or may related to the TIPM in the subject vehicles, representing 189 unique VINs. FCA US LLC did not specify when it received these complaints.

    c. FCA US LLC had identified 104 Field Reports which relate or may relate to the TIPM in the subject vehicles, representing 65 unique VINs. FCA US LLC did not specify when it performed these field reports.

    d. FCA US LLC had identified 207 paid warranty claims related to repair or replacement of the TIPM-7 module, representing 126 unique VINs.

79. In 2013, FCA US LLC conducted a safety recall of 2011 and 2012 model year Dodge Nitro

-12-

**COMPLAINT FOR DAMAGES**

1  and Jeep Liberty vehicles, through which it would "flash" the vehicles' TIPM. The recall was

2  prompted by the fact that the vehicles could experience illuminated airbag warning lamps and

3  restraints not deploying in collisions.

4      80. In that letter, FCA US LLC stated also that it had identified zero reports of crash, fire,

5  injury, or fatality which relates or may relate to the TIPM in the subject vehicles. However, by the

6  date of that letter consumers had submitted to NHTSA at least six reports describing crashes or

7  fires in the relevant vehicles, rendering FCA US LLC's statement erroneous if not intentionally

8  misrepresentative:

9          a.  On September 7, 2013, a consumer reported that "the TIPM fuse exploded" in a MY

10             2011 Jeep Grand Cherokee (NHTSA ID No. 10542447).

11         b.  On March 19, 2014, a consumer reported that the "wires and TIPM started melting

12             and smoking and burned" in a MY 2012 Dodge Ram 5500 (NHTSA ID No.

13             10573426).

14         c.  On March 19, 2014, a consumer reported that the TIPM in a MY 2012 Dodge Ram

15             5500 had caught fire for the second time in a week and that the consumer had taken

16             the truck to a dealership after the first fire (NHTSA ID No. 10573471).

17         d.  On June 5, 2014, a consumer reported that a five-car pileup occurred immediately

18             behind her because she stalled in the middle of the road due to a faulty TIPM in a

19             MY 2011 Dodge Durango (NHTSA ID No. 10596370).

20         e.  On September 18, 2014, a consumer reported that her MY 2011 Durango was

21             "smoking" and that a dealership diagnosed the problem as an electrical short in the

22             TIPM (NHTSA ID No. 10637171).

23         f.  On October 30, 2014, a consumer reported a crash caused by a stall in a MY 2008

24             Jeep Wrangler (NHTSA ID No. 10651411).

25                              *Consumer Complaints to NHTSA*

26      81. FCA US LLC has knowledge of the fact that the defective TIPMs installed in the Vehicle is

27  prone to sudden failure because of the numerous complaints that consumers have made to NHTSA.

28      82. Owners of vehicles equipped with a TIPM-7 have submitted at least 240 complaints to

NHTSA about electrical problems including stalling, headlights turning off, and failure to start—

**COMPLAINT FOR DAMAGES**

1   most, if not all, of which occurred with no warning whatsoever to the driver.

2       83. By the end of 2011, consumers had submitted over 100 complaints about the TIPM to

3   NHTSA.

4       84. Some of these complaints describe dangerous situations, indicating that FCA US LLC is

5   putting the lives of consumers and their passengers at risk. When a defective TIPM suddenly fails

6   without warning, a driver loses the ability to safely operate their vehicle.

7       85. Many of the complaints to NHTSA were made prior to the sale of the Vehicle to Plaintiff.

8       86. For years, FCA US LLC has monitored drivers' safety-related reports to the NHTSA,

9   which can be viewed on the NHTSA's website. There are several hundred complaints on the

10  NHTSA website and elsewhere online dating back to when the TIPM 7 was first introduced in

11  2007 model year FCA US LLC vehicles.

12      87. As early as 2008, drivers of vehicles equipped with the TIPM 7 started contacting the

13  NHTSA to complain that their vehicles were experiencing a host of electrical issues, including

14  uncontrollable activity of the windshield wipers, horn, and alarm system, and the headlights and

15  taillights not working. Drivers also complained that their vehicles would not start and that the

16  vehicles would stall without warning. By the end of 2011, over 100 drivers had complained to the

17  NHTSA that they had experienced some combination of these symptoms, and dealers were

18  diagnosing the problems as stemming from a defective TIPM, with some dealers saying the TIPM

19  was already on a nationwide backorder.

20                          *Pre-Release Testing Data*

21      88. FCA US LLC's knowledge of the TIPM defect is also demonstrated by the fact that FCA

22  US LLC studied and tracked TIPM-related issues through exhaustive pre-release testing. In recent

23  years, FCA US LLC has tested models for millions of miles before their release. For example, FCA

24  US LLC employees put seven million miles on multiple 2011 Jeep Grand Cherokee test vehicles

25  before production. Given the speed and frequency with which the TIPM defect manifests, it is not

26  plausible that this testing would not have alerted FCA US LLC to the existence of the TIPM defect.

27  Only FCA US LLC, however, has access to its pre-release testing data.

28      89. FCA US LLC also receives data about how its vehicles are performing in the days, weeks,

    and months after they are sold. FCA US LLC collects information from both drivers and

                                    -14-
                          **COMPLAINT FOR DAMAGES**

1    dealerships, including through complaints, warranty claims, replacement parts data, and other

2    aggregated data sources. FCA US LLC has exclusive access to this information also.

3    90. FCA US LLC is collecting old TIPM parts that have been replaced, in an effort to keep

4    those parts away from public scrutiny. FCA US LLC is requiring anyone who wants to purchase a

5    new TIPM from FCA US LLC to agree to return to FCA US LLC the old TIPM that is being

6    replaced. This requirement affects non-FCA US LLC mechanics and private individuals who seek

7    to keep the original TIPM parts for any reason, including but not limited to examining those parts

8    for defects. In addition, the owners of these vehicles already have paid for the original TIPM parts,

9    and should not have to give up their personal property in order to buy a replacement part; this

10    amounts to an abusive tactic.

11    91. Notwithstanding the history of TIPM problems in its vehicles, FCA US LLC chose to begin

12    installing the TIPM 7 in 2007 model year vehicles and continued to install the TIPM 7 into

13    vehicles through the 2014 model year.

14    92. Given the repeated, severe problems that plagued the TIPM in its vehicles, FCA US LLC

15    understood that the TIPMs posed a heightened risk of problems for consumers and FCA US LLC

16    was particularly aware of and on the lookout for early indicia of TIPM problems.

17    **FCA US LLC's Failure to Disclose the TIPM Defect**

18    93. FCA US LLC has never disclosed the TIPM defect to Plaintiff prior to the purchase of the

19    Subject Vehicle or at any point during ownership of the Subject Vehicle, and FCA US LLC has

20    never instructed its dealerships to disclose the TIPM defect to drivers or potential purchasers or

21    lessees of vehicles equipped with the TIPM-7.

22    94. The TIPM defect was not known or reasonably discoverable by the Plaintiff before

23    purchase or lease, or without experiencing the defect first hand and exposing themselves to an

24    unreasonable safety risk.

25    95. FCA US LLC has remained silent even as it issued a service bulletin, conducted internal

26    investigations, and saw the TIPM replacement parts go on national backorder and hundreds of

27    complaints for effected vehicles were lodged with the NHTSA.

28    96. FCA US LLC's refusal to publically acknowledge the defect has created widespread

confusion. FCA US LLC's failure to notify consumers, dealerships, or auto-technicians prevents

-15-

**COMPLAINT FOR DAMAGES**

1  the TIPM problem from being efficiently diagnosed. Drivers often do not realize that the symptoms
2  they are experiencing are due to the TIPM defect or that prompt action is needed to ensure they do
3  not experience stalling, headlight loss, or other dangerous symptoms in the future. Likewise, the
4  lack of information makes it less likely that dealerships and auto-technicians will be able to
5  diagnose and fix the TIPM defect, or advise Plaintiff about the dangers of driving the Subject
6  Vehicle.

7  97. As a result of FCA US LLC's inaction and silence, Plaintiff was entirely unaware that
8  Plaintiff purchased, and continues to drive, unsafe and unreliable vehicles. As FCA US LLC
9  knows, a reasonable person would consider the TIPM defect important and would not purchase or
10  lease a vehicle equipped with the TIPM defect were the defect disclosed in advance, or would pay
11  substantially less for the vehicle.

12  <u>ll Statute of Limitations Periods are Tolled by the Discovery Rule and the</u>
13  <u>Doctrine of Fraudulent Concealment</u>

14  98.    FCA US LLC concealed the fact that the Subject Vehicle was equipped with a defective
15  TIPM7. FCA US LLC also concealed the major safety concerns related to the likely failures of the
16  TIPM7.

17  99.    FCA US LLC continued to misrepresent its ability to repair the Subject Vehicle in
18  conformity with the warranty throughout the warranty period.

19  100.   At all relevant times, FCA US LLC was aware of the defects in the TIPM7.

20  101.   As described in more detail above, as early as 2007, FCA US LLC began issuing
21  significant technical service bulletins as the result of NHTSA investigations to its authorized
22  dealers explaining the widespread issues with the TIPM7.  At no point prior to the sale of the
23  vehicle to Plaintiff or during Plaintiff's ownership of the Subject Vehicle did FCA US LLC or an
24  authorized dealer ever inform Plaintiff of the ongoing irreparable defect.

25  102.   FCA US LLC had a duty to disclose the concealed facts alleged above because FCA US
26  LLC knew that Plaintiff did not know a material fact and further knew that such facts were not
27  readily accessible to the Plaintiff because FCA US LLC actively concealed those facts.

28  103. FCA US LLC had a duty to disclose the concealed facts alleged above because FCA US
    LLC was in a superior position of knowledge.

-16-

**COMPLAINT FOR DAMAGES**

104.  FCA US LLC had a duty to disclose the concealed facts alleged above because FCA US LLC actively concealed material facts in order to induce a false belief.

105.  FCA US LLC intended for Plaintiff to rely on those misrepresentations to conceal the fact that the defective TIPM7 could not be repaired.

106.  Prior to the sale of the Subject Vehicle, and at all times thereafter, Defendant therefore failed to disclose the existence of the vehicle's inherent defects to Plaintiff, and Defendant failed to disclose its inability to repair these inherent defects, which prevented the Subject Vehicle from conforming to its applicable warranties.  In effect, after the sale of the Subject Vehicle, Defendant fraudulently concealed from purchasers, including Plaintiff, the fact that the dealers were not properly repairing the defects to the TIPM7, and knew that the limited work that FCA US LLC had authorized its dealerships to perform on those vehicles would not properly repair them.

107.  On or around October 2015, Plaintiff received a letter in the mail from the settlement administrator in a class action lawsuit informing Plaintiff that Plaintiff was a member of a class of individuals for which a "class action settlement involving the Totally Integrated Power Module (TIPM)" had been reached.  That letter discussed a recall related to the TIPM, reimbursement for past repairs related to the TIPM, and an extended warranty for a part effected by the TIPM.  Specifically, the letter stated: "The [class action] lawsuit claims that the Totally Integrated Power Module (TIPM) installed in model-years 2011, 2012, and 2013 Dodge Durango and Jeep Grand Cherokee vehicles is defective and poses a safety hazard.  Plaintiff alleged that FCA US violated the law by failing to disclose the defect to consumers and that it should be required to repair the defect free of charge and reimburse consumers for the out-of-pocket expenses."  This was the earliest date that FCA US LLC made any attempt to notify Plaintiff of any of the known defects in the TIPM7.  This date was the earliest date that Plaintiff could have had any sort of notice of the facts which give rise to Plaintiff's fraud causes of action.  FCA US LLC did not disclose any of this information prior to the sale of the vehicle to Plaintiff or at any earlier date during ownership.  Accordingly, Plaintiff could not have discovered Plaintiff's claims related to fraud prior to October 2015.  Plaintiff could not, through reasonable and diligent investigation, have discovered such on an earlier date because of FCA US LLC's fraudulent misrepresentations and concealment of the defects in the TIPM7 in Plaintiff's vehicle, as previously alleged above,  and because of the

-17-
**COMPLAINT FOR DAMAGES**

1  repeated false assurances of FCA US LLC and its service dealership agents made to Plaintiff, on

2  which Plaintiff reasonably relied, that FCA US LLC had and would repair any problems with the

3  transmission in Plaintiff's vehicle that occurred during the express warranty period.   The statute of

4  limitations for each of Plaintiff's claims against FCA US LLC was therefore tolled under the

5  delayed discovery rule and the doctrine of fraudulent concealment until Plaintiff could have first

6  discovered on or around October 2015 that FCA US LLC had concealed the irreparable defects in

7  the TIPM7.

8      108.   Because FCA US LLC failed to disclose these foregoing facts to Plaintiff, all statute of

9  limitations periods with respect to sale of the Subject Vehicle were tolled by the doctrines of

10  fraudulent concealment, the discovery rule, and/or equitable tolling.  As alleged herein, FCA US

11  LLC wrongfully concealed the fact (1) that the TIPM7 had a irreparable defect that posed

12  significant safety risk to the drivers and the public; and (2) that its dealerships were making

13  inadequate repairs that were incapable of addressing the root cause of the Vehicle's malfunctions.

14      109.   Plaintiff did not discover the operative facts that are the basis of the claims alleged

15  herein because the facts were concealed in confidential and privileged documents, which a

16  consumer would not know about and could not obtain.

17      110.   No amount of diligence by Plaintiff could have led to the discovery of these facts

18  because they were kept secret by FCA US LLC and, therefore, Plaintiff was not at fault for failing

19  to discover these facts.

20      111.   Plaintiff did not have actual knowledge of facts sufficient to put her on notice.  Plaintiff

21  did not know, nor could have known, about FCA US LLC's inability to repair the defects in its

22  TIPM7 because, as alleged above, FCA US LLC kept this information highly confidential, and its

23  dealership assured Plaintiff that its repairs were effective.

24  ///

25  ///

26  ///

27  ///

28  ///

///

-18-

**COMPLAINT FOR DAMAGES**

# FIRST CAUSE OF ACTION

## Breach of Implied Warranty of Merchantability under Song-Beverly Warranty Act

### Against all Defendants

112. Plaintiff incorporates herein by reference each and every allegation contained in the preceding and succeeding paragraphs as though herein fully restated and re-alleged.

113. FCA US LLC and its authorized dealership at which Plaintiff purchased the Subject Vehicle had reason to know the purpose of the Subject Vehicle at the time of sale of the Subject Vehicle. The sale of the Subject Vehicle was accompanied by an implied warranty of fitness.

114. The sale of the Subject Vehicle was accompanied by an implied warranty that the Subject Vehicle was merchantable pursuant to Civil Code section 1792.

115. The Subject Vehicle was not of the same quality as those generally acceptable in the trade because it was equipped with transmission, electrical, suspension, and engine defects.

116. The Subject Vehicle was not fit for the ordinary purpose for which such goods are used because it was equipped with transmission, electrical, suspension, and engine defects.

117. The Subject Vehicle did not measure up to the promises or facts stated on the container or label because it was equipped with transmission, electrical, suspension, and engine defects.

118. Plaintiff is entitled to justifiably revoke acceptance of the Subject Vehicle under Civil Code section 1794, *et seq*; Plaintiff hereby revokes acceptance of the Subject Vehicle.

119. Plaintiff is entitled to replacement or reimbursement pursuant to Civil Code section 1794, *et seq*.

120. Plaintiff is entitled to rescission of the contract pursuant to Civil Code section 1794, *et seq*. and Commercial Code section 2711.

121. Plaintiff is entitled to recover any "cover" damages under Commercial Code sections 2711, 2712, and Civil Code section 1794, *et seq*.

122. Plaintiff is entitled to recover all incidental and consequential damages pursuant to 1794 *et seq* and Commercial Code sections 2711, 2712, and 2713 *et seq*.

///

///

**COMPLAINT FOR DAMAGES**

## SECOND CAUSE OF ACTION
### Breach of Express Warranty under Song-Beverly Warranty Act
### Against all Defendants

123. Plaintiff incorporates herein by reference each and every allegation contained in the preceding and succeeding paragraphs as though herein fully restated and re-alleged.

124. Express warranties accompanied the sale of the vehicle to Plaintiff by which FCA US LLC undertook to preserve or maintain the utility or performance of Plaintiff's vehicle or provide compensation if there was a failure in such utility or performance.

125. The vehicle was delivered to Plaintiff with serious defects and nonconformities to warranty and developed other serious defects and nonconformities to warranty including, but not limited to transmission, electrical, suspension, and engine defects.

126. Pursuant to the Song-Beverly Consumer Warranty Act (herein after the "Act") Civil Code sections 1790 *et seq.* the vehicle constitutes "consumer goods" used primarily for family or household purposes, and Plaintiff has used the vehicle primarily for those purposes.

127. Plaintiff is a "buyer" of consumer goods under the Act.

128. Defendant FCA US LLC is a "manufacturer" and/or "distributor" under the Act.

129. The foregoing defects and nonconformities to warranty manifested themselves within the applicable express warranty period. The nonconformities substantially impair the use, value and/or safety of the vehicle.

130. Plaintiff delivered the vehicle to an authorized FCA US LLC repair facility for repair of the nonconformities.

131. Defendant was unable to conform Plaintiff's vehicle to the applicable express after a reasonable number of repair attempts.

132. Notwithstanding Plaintiff's entitlement, Defendant FCA US LLC has failed to either promptly replace the new motor vehicle or promptly make restitution in accordance with the Song-Beverly Act.

133. By failure of Defendant to remedy the defects as alleged above, or to issue a refund or replacement, Defendant is in breach of its obligations under the Song-Beverly Act.

134. Under the Act, Plaintiff is entitled to reimbursement of the price paid for the vehicle less

-20-

**COMPLAINT FOR DAMAGES**

1    that amount directly attributable to use by the Plaintiff prior to discovery of the nonconformities.

2      135. Plaintiff is entitled to all incidental, consequential, and general damages resulting from

3    Defendant's failure to comply with their obligations under the Song-Beverly Act.

4      136. Plaintiff is entitled under the Song-Beverly Act to recover as part of the judgment a sum

5    equal to the aggregate amount of costs and expenses, including attorney's fees, reasonably incurred

6    in connection with the commencement and prosecution of this action.

7      137. Plaintiff is entitled in addition to the amounts recovered, a civil penalty of up to two times

8    the amount of actual damages in that FCA US LLC, has willfully failed to comply with its

9    responsibilities under the Act.

10   ///

11   ///

12   ///

13   ///

14   ///

15   ///

16   ///

17   ///

18   ///

19   ///

20   ///

21   ///

22   ///

23   ///

24   ///

25   ///

26   ///

27   ///

28   ///

-21-

**COMPLAINT FOR DAMAGES**

# THIRD CAUSE OF ACTION

## Fraudulent Inducement – Concealment

## Against Defendant FCA US LLC Only

138.  Plaintiff incorporates herein by reference each and every allegation contained in the preceding and succeeding paragraphs as though herein fully restated and re-alleged.

139.  FCA US LLC concealed a known defect from Plaintiff. The defective component is called the totally integrated power module (or TIPM). The TIPM consists of a computer, fuses, and internal relays, and is responsible for controlling and distributing electrical power to the entire vehicle—everything from steering and brakes, to the alarm, headlights, and the fuel pump.

140.  Since the TIPM controls power to a wide variety of essential vehicle systems, including safety and security systems, the defect often leaves the vehicles incapable of providing reliable or safe transportation. This defect may cause a vehicle to fail to start (or take dozens of attempts before the engine will turn over) because of the defect, and vehicles start up at other times only to stall, sometimes while traveling at high speeds. The TIPM defect has caused headlights and taillights to suddenly shut off. It has also caused horns to honk, car alarms to sound, and windshield wipers to activate all on their own.

141.  FCA US LLC intentionally failed to disclose the known TIPM defect, which was known only to it.

142.  FCA US LLC concealed and suppressed material facts to boost confidence in its vehicles and falsely assure purchasers and lessors of its vehicles that FCA US LLC was a reputable manufacturer that stands behind its vehicles after they are sold and that its vehicles are safe and reliable.

143.  FCA US LLC's deceptive omissions infected all purchases and leases of vehicles equipped with the TIPM-7, regardless of whether the vehicles were used or new at the time of acquisition. As early as 2007, FCA US LLC knew of the TIPM defects. FCA US LLC had ample opportunity to communicate to the public, its dealerships, and government regulators in a fashion that would have informed the car-buying public about the TIPM defects in vehicles equipped with the TIMP-7. For example, FCA US LLC could have recalled the vehicles. Plaintiff reasonably, justifiably, and detrimentally relied on FCA US LLC's silence about the TIPM defect when

-22-

1    deciding whether to purchase or lease a vehicle equipped with a TIPM-7, in part because FCA US
2    LLC was, and still is, in a position of superior knowledge about the TIPM defects.  Plaintiff
3    reasonably trusted that FCA US LLC would not sell a dangerously defective vehicle or fail to recall
4    those vehicles – or otherwise make widely known that the vehicles were dangerously defective
5    such that current and prospective owners and lessees could make informed decisions to protect
6    themselves and their families.

7    144.   FCA US LLC acted with malice and a willful and conscious disregard for the rights and
8    safety of the Plaintiff and the public in committing these fraudulent acts.

9    145.   FCA US LLC had, and still has, a duty to disclose the TIPM defects because they were
10   known and/or accessible only the FCA US LLC, which had superior knowledge and access to the
11   relevant facts, and because FCA US LLC knew that the relevant facts were not known or
12   reasonably discoverable by Plaintiff.

13   146.   Under the National Traffic and Motor Vehicle Safety Act (the "Safety Act"), 49 U.S.C.
14   §§ 30101-30183, FCA US LLC had the duty to disclose the TIPM defects to NHTSA, and by
15   extension and implication to the public. *Id.* § 30118(c). If FCA US LLC had disclosed the TIPM
16   defects to NHTSA, NHTSA would have made that information public on its websites
17   (www.safecar.gov and www.nhtsa.dot.gov) and its automobile safety telephone hotline.

18   147.   FCA US LLC still has not made full and adequate disclosure and continues to defraud
19   Plaintiff by concealing material information regarding the TIPM defects that exist in the Vehicle
20   and the risks posed by those defects.

21   148.   FCA US LLC actively concealed and/or suppressed these material facts, in whole or in
22   part, to protect its profits and avoid recalls that would have hurt the brand's image and cost FCA
23   US LLC money, and it did so at the expense of Plaintiff.

24   149.   Because FCA US LLC knew that any reasonable consumer would not purchase a vehicle
25   with a defective TIPM, or would pay only substantially less for that vehicle, and FCA US LLC was
26   concealing material information about the TIPM defects, FCA US LLC must have known that
27   Plaintiff was acting on the basis of mistaken knowledge that their vehicles were safe and reliable
28   when they decided to purchase or lease them at market price (without a discount to reflect that they
     contained a defective TIPM).

**COMPLAINT FOR DAMAGES**

1    150.  Plaintiff could not have discovered the TIPM defect because FCA US LLC kept all
2    testing information confidential.

3    151.  That FCA US LLC actively concealed an important fact from Plaintiff or prevented her
4    from discovering that fact.

5    152.  Plaintiff did not know about the TIPM defect.

6    153.  FCA US LLC intended to deceive Plaintiff by continuing to market the vehicle and
7    concealing the existence of a known TIPM defect which posed major safety concerns.

8    154.  Had the omitted information been disclosed, Plaintiff reasonably would have behaved
9    differently.

10   155.  Plaintiff was harmed.

11   156.  FCA US LLC's concealment of the TIPM defect was a substantial factor in causing
12   Plaintiff's harm.

13   157.  The concealment substantially influenced Plaintiff to purchase to Subject Vehicle;
14   Plaintiff would not have purchased the Subject Vehicle had the TIPM defect been disclosed prior
15   to sale.

16   158.  The concealed TIPM defect was material.

17   ///
18   ///
19   ///
20   ///
21   ///
22   ///
23   ///
24   ///
25   ///
26   ///
27   ///
28   ///

-24-
**COMPLAINT FOR DAMAGES**

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against all Defendants, and each of them, as follows:

A.   For replacement or restitution, at Plaintiff's election, according to proof;

B.   For incidental damages, according to proof;

C.   For consequential damages, according to proof;

D.   For damages sustained from negligent auto repairs, according to proof;

E.   For a civil penalty as provided in Song-Beverly, in an amount not to exceed two times the amount of Plaintiff's actual damages;

F.   For actual attorney's fees, reasonably incurred;

G.   For costs of suit and expenses, according to proof;

H.   For the difference between the value of the Vehicle as accepted and the value the Vehicle would have had if it had been as warranted;

I.   For remedies provided in Chapters 6 and 7 of Division 2 of the Commercial Code;

J.   For pre-judgment interest at the legal rate;

K.   For punitive damages according to proof;

L.   Such other relief the Court deems appropriate.

Date:   June 23, 2020                THE BARRY LAW FIRM

By:
DAVID N. BARRY, ESQ.
Attorney for Plaintiff,
CONRADO HERRERA

-25-

**COMPLAINT FOR DAMAGES**

**EXHIBIT B**

ELECTRONICALLY FILED
7/17/2020 1:30 PM
Kern County Superior Court
By Vanesa Jackson, Deputy

1 | **LEWIS BRISBOIS BISGAARD & SMITH LLP**
ROGER S. RAPHAEL, SB# 111946
2 |   Email: Roger.Raphael@lewisbrisbois.com
SHAHRAM NASSI, SB# 239812
3 |   Email: Shahram.Nassi@lewisbrisbois.com
333 Bush Street, Suite 1100
4 | San Francisco, California 94104-2872
Telephone: 415.362.2580
5 | Facsimile:  415.434.0882

6 | Attorneys for Defendant,
FCA US LLC, a Delaware Limited Liability Company
7 |

8 | SUPERIOR COURT OF THE STATE OF CALIFORNIA

9 | COUNTY OF KERN – METROPOLITAN DIVISION

10 |

11 | CONRADO HERRERA, an individual,

Case No. BCV-20-101475 TSC

12 | Plaintiff,

*Assigned for All Purposes to Hon. Thomas S. Clark, Dept. 17*

13 | vs.

**DEFENDANT FCA US LLC'S ANSWER TO COMPLAINT**

14 | FCA US LLC, a Delaware Limited Liability Company, and DOES 1 through 20, inclusive,

15 | Defendants.

Action Filed:      June 26, 2020
Trial Date:       None Set

16 |

17 |    **COMES NOW** Defendant FCA US, LLC, a Delaware Limited Liability Company ("FCA"), for

18 | itself alone and for no other Defendant or Cross-Defendant, and for its Answer to Plaintiff,

19 | CONRADO HERRERA ("Plaintiff"), unverified Complaint on file herein allege as follows:

20 |    Pursuant to California Code of Civil Procedure section 431.30(d), FCA denies each and every,

21 | all and singular, generally and specifically, allegation contained in the Complaint and each cause of

22 | action thereof; denies that FCA is liable under the theories or in the manner set forth in the Complaint,

23 | or at all; and denies that Plaintiff was damaged as a result of the alleged conduct of FCA as set forth in

24 | the Complaint and each cause of action thereof, or at all.

25 |    **AS A FIRST SEPARATE AFFIRMATIVE DEFENSE**

26 |    1.      FCA alleges that the Complaint, in whole or in part, fails to state a claim upon which

27 | relief can be granted.

28 | / / /

4845-6886-3171.1

1

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

**AS A SECOND SEPARATE AFFIRMATIVE DEFENSE**

2.    FCA alleges that any injury that Plaintiff may have sustained, as set forth in the Complaint herein and which resulted in the damages as therein alleged, was caused in whole or in part by the contributory negligence and/or culpable conduct of Plaintiff or Plaintiff's failure to exercise the care ordinarily exercised by a prudent person, and not as a result of any negligence, culpable conduct, or breach of warranty on the part of FCA, or any alleged nonconformity/nonconformities in the subject vehicle, and that such negligence and/or culpable conduct bars and/or diminishes Plaintiff's recovery.

**AS A THIRD SEPARATE AFFIRMATIVE DEFENSE**

3.    FCA alleges that Plaintiff's damages, if any, were caused or contributed to by the negligence or fault of other individuals, firms, corporations, or entities over whom FCA has or had no control or right of control, and for whom it is not responsible, and that Plaintiff's recovery, if any, should therefore be diminished or barred in accordance with law.

**AS A FOURTH SEPARATE AFFIRMATIVE DEFENSE**

4.    FCA alleges that any recovery or settlement Plaintiff may obtain from such other individuals, firms, corporations, or entities over whom FCA has or had no control or right of control must reduce or bar altogether any recovery or judgment which Plaintiff might obtain from FCA.

**AS A FIFTH SEPARATE AFFIRMATIVE DEFENSE**

5.    FCA alleges that Plaintiff's claims are barred by any release and/or releases executed by Plaintiff and individuals, firms, corporations, or entities other than FCA.

**AS A SIXTH SEPARATE AFFIRMATIVE DEFENSE**

6.    FCA alleges that any damages sustained by Plaintiff were the result of the unreasonable, unforeseeable, and inappropriate misuse and/or abuse of the subject vehicle by the Plaintiff.

**AS A SEVENTH SEPARATE AFFIRMATIVE DEFENSE**

7.    FCA alleges that Plaintiff failed to comply with the written and oral instructions relating to use of the subject vehicle and this failure caused or contributed to the alleged damages, if any.

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

### AS AN EIGHTH SEPARATE AFFIRMATIVE DEFENSE

8.     FCA alleges that Plaintiff's damages, if any, were caused by alteration or modification of the vehicle which is the subject of this lawsuit.

### AS A NINTH SEPARATE AFFIRMATIVE DEFENSE

9.     FCA alleges that said alteration or modification of the subject vehicle voids the express or implied warranties.

### AS A TENTH SEPARATE AFFIRMATIVE DEFENSE

10.     FCA alleges that Plaintiff's damages, if any, were caused or contributed to by Plaintiff's failure to properly maintain and/or repair the vehicle which is the subject of this lawsuit.

### AS AN ELEVENTH SEPARATE AFFIRMATIVE DEFENSE

11.     FCA alleges that Plaintiff's claims and/or causes of action are barred, in whole or in part, by the doctrine of preemption.

### AS A TWELFTH SEPARATE AFFIRMATIVE DEFENSE

12.     FCA alleges that Plaintiff's claims and/or causes of action are barred, in whole or in part, by waiver, estoppel, and/or laches.

### AS A THIRTEENTH SEPARATE AFFIRMATIVE DEFENSE

13.     FCA alleges that Plaintiff's causes of action in the complaint are barred by the applicable statute of limitations.

### AS A FOURTEENTH SEPARATE AFFIRMATIVE DEFENSE

14.     FCA alleges that Plaintiff has failed to join a party or parties necessary and indispensable to this action.

### AS A FIFTEENTH SEPARATE AFFIRMATIVE DEFENSE

15.     FCA alleges that Plaintiff failed to mitigate its damages, if any.

### AS A SIXTEENTH SEPARATE AFFIRMATIVE DEFENSE

16.     FCA alleges that at the time the alleged nonconformity/nonconformities arose the express and/or implied warranty period covering the subject vehicle and its component parts had expired, and thus, Plaintiff's claims are barred.

/ / /

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1    **AS A SEVENTEENTH SEPARATE AFFIRMATIVE DEFENSE**

2    17.    FCA alleges that the Complaint is barred, in whole or in part, by res judicata or

3    collateral estoppel.

4    **AS AN EIGHTEENTH SEPARATE AFFIRMATIVE DEFENSE**

5    18.    FCA alleges that in the event an alleged nonconformity is found to exist, FCA and/or

6    its authorized dealerships did not have a reasonable opportunity to repair the subject vehicle.

7    **AS A NINETEENTH SEPARATE AFFIRMATIVE DEFENSE**

8    19.    FCA alleges that Plaintiff failed to directly notify FCA of the need for the repair of the

9    nonconformity/nonconformities, and thus, Plaintiff's claims are barred.

10    **AS A TWENTIETH SEPARATE AFFIRMATIVE DEFENSE**

11    20.    FCA alleges that the nonconformities alleged by Plaintiff are items that are not covered

12    by any express or implied warranty and therefore Plaintiff's claims are barred.

13    **AS A TWENTY-FIRST SEPARATE AFFIRMATIVE DEFENSE**

14    21.    FCA alleges that the nonconformities alleged by Plaintiff were caused solely by

15    Plaintiff's operation of the vehicle.

16    **AS A TWENTY-SECOND SEPARATE AFFIRMATIVE DEFENSE**

17    22.    FCA alleges that Plaintiff's claims and/or causes of action, in whole or in part, are

18    uncertain, ambiguous, and unintelligible.

19    **AS A TWENTY-THIRD SEPARATE AFFIRMATIVE DEFENSE**

20    23.    FCA alleges that the nonconformities alleged by Plaintiff did not substantially impair

21    the use, value, or safety of the vehicle.

22    **AS A TWENTY-FOURTH SEPARATE AFFIRMATIVE DEFENSE**

23    24.    FCA alleges that plaintiff's cause of action for fraudulent inducement is barred,

24    diminished or reduced by a lack of privity between plaintiff and FCA.

25    / / /

26    / / /

27    / / //

28    / / /


LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4845-6886-3171.1

1

## AS A TWENTY- FIFTH SEPARATE AFFIRMATIVE DEFENSE

2        25.    FCA alleges that plaintiff's cause of action for fraudulent inducement is barred by the

3 Economic Loss Rule.

4        ## AS A TWENTY- SIXTH SEPARATE AFFIRMATIVE DEFENSE

5        26.    FCA alleges that plaintiff's cannot show proper damages required for a cause of action

6 for fraudulent inducement, and therefore said cause of action is barred.

7        ## AS A TWENTY- SEVENTH SEPARATE AFFIRMATIVE DEFENSE

8        27.    FCA alleges that plaintiff fails to state facts sufficient to entitle plaintiff to an award of

9 punitive or exemplary damages.

10       ## AS A TWENTY- EIGHTH SEPARATE AFFIRMATIVE DEFENSE

11       28.    FCA alleges that it may have additional defenses or claims available to it of which it is

12 not now aware. FCA reserves the right to assert additional defenses or cross-claims, counterclaims, or

13 third-party claims as may be revealed to be appropriate through discovery or otherwise.

14       **WHEREFORE,** FCA prays that nothing be taken by the Complaint, for costs, and for all

15 other relief as the Court may deem proper.

16 DATED: July 17, 2020                                LEWIS BRISBOIS BISGAARD & SMITH LLP

17

18                                                   By: _____

19                                                   Roger S. Raphael

20                                                   Shahram Nassi
                                                     Attorneys for Defendant, FCA US. LLC

21

22

23

24

25

26

27

28



**CALIFORNIA STATE COURT PROOF OF SERVICE**
***Herrera v. FCA US, LLC, et al.***
Kern County Superior Court Case No. BCV-20-101475 TSC

STATE OF CALIFORNIA, COUNTY OF SAN FRANCISCO

At the time of service, I was over 18 years of age and not a party to the action. My business address is 333 Bush Street, Suite 1100, San Francisco, CA 94104.

On July 17, 2020, I served the following document:

**DEFENDANT FCA US LLC'S ANSWER TO PLAINTIFF'S COMPLAINT**

I served the document on the following person at the following address (including a fax number and email address, if applicable):

| | |
|---|---|
| David N. Barry, Esq.<br>The Barry Law Firm<br>11845 W. Olympic Blvd., Suite 1270<br>Los Angeles, CA 90064<br>***Attorneys for Plaintiff*** | Tel:    310.684.5859<br>Fax:    310.862.4539<br>Email:   dbarry@mylemonrights.com |

The document was served by the following means:

☒ **(BY ELECTRONIC SERVICE VIA FIRST LEGAL)**  Based on a court order, I caused the above-entitled document to be served through First Legal at https://firstlegal.com addressed to all parties appearing on the electronic service list for the above-entitled case. The service transmission was reported as complete and a copy of the First Legal Filing Receipt Page/Confirmation will be filed, deposited, or maintained with the original document in this office.

☒ **(BY ELECTRONIC TRANSMISSION ONLY)** <span style="color:red">Note that during the Coronavirus (COVID-19) pandemic, this office will be working remotely, not able to send physical mail as usual, and is therefore using only electronic mail.</span> No electronic message or other indication that the transmission was unsuccessful was received within a reasonable time after the transmission.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Dated: July 17, 2020

_____
Sandra Hayes



6

**PROOF OF SERVICE**

1

## CERTIFICATE OF SERVICE
*Herrera v. FCA US, LLC, et al.*
United States District Court-ED, Bakersfield Division, Case No.

2

3   STATE OF CALIFORNIA, COUNTY OF SAN FRANCISCO

4         At the time of service, I was over 18 years of age and not a party to the action.  My business address is 333 Bush Street, Suite 1100, San Francisco, CA 94104. I am employed in the office of a member of the bar of this Court at whose direction the service was made.

5

6         On July 21, 2020, I served the following document:

7   **DEFENDANT FCA US, LLC'S NOTICE TO FEDERAL COURT OF REMOVAL PURSUANT TO 28 U.S.C. §§ 1332(a) AND 1441(b); CERTIFICATE OF INTERESTED PARTIES**

8

9         I served the document on the following person at the following address (including a fax number and email address, if applicable):

10

| David N. Barry, Esq.<br>The Barry Law Firm<br>11845 W. Olympic Blvd., Suite 1270<br>Los Angeles, CA  90064<br>***Attorneys for Plaintiff*** | Tel:      310.684.5859<br>Fax:     310.862.4539<br>Email:   dbarry@mylemonrights.com |
|---|---|

11

12

13

14         The document was served by the following means:

15   ☒ **(BY CM/ECF SYSTEM)** Pursuant to Local Rule, I electronically eFiled the document with the Clerk of the Court using the CM/ECF system.

16   ☒ **(BY ELECTRONIC TRANSMISSION ONLY)** <span style="color:red">**Note that during the Coronavirus (COVID-19) pandemic, this office will be working remotely, not able to send physical mail as usual, and is therefore using only electronic mail.**</span> No electronic message or other indication that the transmission was unsuccessful was received within a reasonable time after the transmission.

17

18

19         I declare under penalty of perjury under the laws of the United States of America that the above is true and correct.

20

21   Dated: July 21, 2020                    */s/ B. Yasinah Johnson*
                                               B. Yasinah Johnson

22

23

24

25

26

27

28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

4819-8346-9507.1